UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

DAVID GIORGADZE )
)
Plaintiff, )
) No. 2:06-CV-264
v. )
) Chief Judge Curtis L. Collier
TENNESSEE TECHNOLOGY CENTER, and )
TENNESSEE BOARD OF REGENTS, )
)
Defendant. )

## MEMORANDUM

Before the Court is Defendants Tennessee Technology Center and Tennessee Board of Regents' (collectively "Defendants") motion to dismiss (Court File No. 3) and memorandum in support (Court File No. 4). Plaintiff David Giorgadze ("Plaintiff") has not filed a response. For the following reasons, the Court will **GRANT** Defendants' motion (Court File No. 3).

## I.    RELEVANT FACTS

Plaintiff, at some point, enrolled in the Tennessee Technology Center at Elizabethton's ("TTC-E") nursing program (Court File No. 1, Attachment No. 1, Complaint ("Compl."), at ¶ 3). In March 2006, Plaintiff was suspended from the program (*id*. at ¶). This lawsuit concerns that suspension.

Plaintiff alleges he was suspended from the program because he used notes during a test (*id*. at ¶ 14). Plaintiff was unaware he could not use notes during tests, so he appealed his suspension

(*id.*). According to the Complaint, Plaintiff was ultimately found innocent of wrongdoing and offered reinstatement to the program (*id.* at ¶ 15). Plaintiff's return to the program was delayed because TTC-E requested Plaintiff's high school transcripts, although Plaintiff had already "been enrolled in the program for some time" (*id.*). After several months, Plaintiff still had not been reinstated to the program (*id.* at ¶ 16).

On June 20, 2006, a meeting was held, per Plaintiff's request, with TTC-E's administration to determine when Plaintiff would be readmitted to the program (*id.*). At that meeting, the Director of Nursing and the Student Services Coordinator offered Plaintiff the chance to return to the Practical Nursing Program if he agreed to repeat his clinical rotation and all tests in Medical Surgery I and II (*id.* at ¶ 17). Plaintiff objected to this because he saw no reason to repeat those courses, since he believed he had performed satisfactorily (*id.* at ¶ 18). Eventually, Plaintiff learned he had received a rating of "Unsatisfactory" in his clinical rotation (*id.* at ¶ 19). Plaintiff had not been informed of this rating, even though TTC-E's policy and procedure require students be notified of unsatisfactory evaluations (*id.*). Plaintiff wrote a letter to Defendants, objecting to having to retake the courses and requesting reinstatement (*id.* at ¶ 21). The Student Services Coordinator at TTC-E told Plaintiff they intended to readmit him at the beginning of the next term, and a "mailing error" had kept their communication from arriving (*id.* at ¶ 22). The letter did not arrive until four days after the new term began (*id.*).

Plaintiff alleges TTC-E's actions were willful, malicious, and intended to discriminate based on Plaintiff's age, sex and national origin (*id.* at ¶¶ 25-26). Plaintiff brings suit against TTC-E and the Board of Regents under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101

*et seq*. (*id.* at ¶ 6–7). Plaintiff also brings state-law claims for breach of contract, bad faith dealing and wrongful termination or dismissal (*id.* at ¶ 8). Plaintiff seeks injunctive relief in the form of reinstatement into the program, (*id.* at ¶ 13), compensatory damages for harm to his well-being, future income lost due to Plaintiff's damaged reputation, (*id.* at ¶ 25), and costs and attorney's fees (*id.* at ¶ 26). Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(1) and (6).

## II. STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998); *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (noting courts should neither weigh evidence nor evaluate the credibility of witnesses); *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). Rather, the Court must liberally construe the complaint in favor of the party opposing the motion and determine whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

In deciding a motion to dismiss, the question is "not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (citations and quotation marks omitted). However, bare assertions of legal conclusions are insufficient. *Scheid v. Fanny Farmer Candy Shops, Inc*., 859

F.2d 434, 436 (6th Cir. 1988). The "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (emphasis in original).

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may take the form of either a facial or a factual attack. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). *Facial* attacks challenge the sufficiency of the pleading itself. *Factual* attacks, on the other hand, challenge the factual existence of subject matter jurisdiction, irrespective of what is or might be alleged in the pleadings. *Id.* An assertion of Eleventh Amendment sovereign immunity constitutes an attack of the latter variety.

In considering a factual attack upon the court's jurisdiction, no presumption of truth applies to the plaintiff's factual allegations, and the court is free to weigh the evidence and resolve factual disputes so as to satisfy itself as to the existence of its power to hear the case. *Id.* (internal citations omitted). "[T]he entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, i.e., that it is an arm of the state." *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002) (adopting rule from United States Courts of Appeal for the Third, Fifth, Seventh, and Ninth Circuits).

### III. DISCUSSION

Defendant moves to dismiss Plaintiff's entire complaint for several reasons. First, Defendant argues Plaintiff has failed to state a claims for which relief can be granted with respect to Title VII since Plaintiff does not allege discrimination in the employment context. Similarly, Defendant states Plaintiff has failed to state a claim under the THRA because Plaintiff did not allege discrimination

4

in connection with employment, public accommodations, or housing.[1]  Finally, Defendant contends the Court is without jurisdiction to hear Plaintiff's breach of contract, bad faith dealing and wrongful termination or dismissal claims because the Tennessee Claims Commission has exclusive jurisdiction to entertain those claims, and they are barred by the doctrine of sovereign immunity.

### A. Title VII Claims

Title VII prohibits an employer from discriminating "on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "Title VII was enacted to eliminate discrimination in *employment* on account of race, color, religion, sex, or national origin." *E.E.O.C. v. K-Mart Corp.*, 694 F.2d 1055, 1068 (6th Cir. 1982) (emphasis added). Plaintiff does not allege he was an employee of either of the defendants; in fact, he alleges he was a student at TTC-E. Title VII addresses employee-employer relationships and not student-school relationships. *See Rose v. Kenyon Coll.*, 211 F. Supp. 2d 931, 938 (S.D. Ohio 2002) (holding Title VII was not appropriate means for expelled student to raise sexual discrimination claims against college, absent allegation that student was college employee). Accordingly, Plaintiff has failed to state a claim under Title VII, and Defendant's motion to dismiss this claim will be **GRANTED**.

### C. Sovereign Immunity

The Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The driving force behind the Eleventh Amendment is the policy of protecting state

---

[1] Although Defendants make this argument, the Court will not address it since the Court addresses the THRA claim when analyzing whether the claims are barred by sovereign immunity.

5

sovereignty. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (stating Eleventh Amendment confirms the presupposition "each State is a sovereign entity in our federal system"); *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890) (invoking principle of sovereign immunity in holding Eleventh Amendment's jurisdictional bar extends beyond its literal words to also deprive federal courts of jurisdiction over causes of action brought against an unconsenting State by its own citizens). Inherent in the nature of sovereignty is a State's immunity from suits by individuals without its consent. *See Seminole Tribe*, 517 U.S. at 54. Thus, States have almost complete control over whether, to what extent, and where they may be sued. *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."). Unless a state has waived its immunity or Congress has validly abrogated the state's immunity, neither a State nor agencies acting under its control may be subject to suit in federal court. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

Thus, to determine whether the defendants are protected by sovereign immunity, the Court must answer two questions. "First, the Court must ask whether the defendants are agencies of the state to which sovereign immunity applies? Second, if immunity does apply, has this immunity been waived?" *Boyd v. Tennessee State University*, 848 F. Supp. 111, 113 (M.D. Tenn. 1994).

Defendant Tennessee Board of Regents has previously been recognized as a state agency covered by the state's grant of sovereign immunity. *See id.* ("There is no serious question that the defendants here, Tennessee State University ("TSU") and the Tennessee Board of Regents ("TBR"), are state agencies covered by the state's grant of sovereign immunity."). Although the Court did not find any decisions that explicitly address the Eleventh Amendment status of TTC-E, there are

several decision holding members of Tennessee's university system are entitled to the State's Eleventh Amendment immunity. *See Henderson v. Southwest Tennessee Community College*, 282 F. Supp. 2d 804, 807 (W.D. Tenn. 2003) (holding Southwest Tennessee Community College was entitled to the State's Eleventh Amendment immunity); *Boyd*, 848 F. Supp. at 113 (noting Tennessee State University was covered by the state's grant of sovereign immunity); *Hiefner v. University of Tennessee*, 914 F. Supp. 1513, 1515 (E.D. Tenn. 1995) (noting that as an arm or alter-ego of the State of Tennessee, the University of Tennessee was entitled to the State's Eleventh Amendment immunity from suit). As a member of the State of Tennessee's state university and college system, *see* Tenn. Code Ann. § 49-8-101, TTC-E is also entitled to the State of Tennessee's Eleventh Amendment immunity from suit. Plaintiff's remaining claims will be barred from suit unless the State has waived its immunity.[2]

The Tennessee Constitution provides, in part, that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. The Tennessee Legislature waived sovereign immunity on a limited variety of claims when it enacted the Tennessee Claims Commission Act (the "Act"), Tenn. Code Ann. § 9-8-301 *et seq*. Among the actions which are not afforded the protection of sovereign immunity are claims involving

---

[2]The Court finds Congressional abrogation of the State's immunity is inapplicable in this case. Plaintiff did not file a response alleging Congress abrogated Defendant's immunity by statute, and the Court is not aware of any federal statute in which Congress clearly states it intends to abrogate state sovereign immunity in this situation. *See Lawson v. Shelby County, Tenn.*, 211 F.3d 331, 334-35 (6th Cir. 2000) (two conditions must be satisfied for Congressional abrogation of state sovereign immunity to be valid: (1) Congress must state clearly it intends a statute to abrogate state sovereign immunity, and (2) a determination must be made as to whether Congress acted pursuant to a valid exercise of power). Therefore, the Court will focus on whether the state waived its Eleventh Amendment protection.

"breach of a written contract between the claimant and the state which was executed by one (1) or more state officers or employees with authority to execute the contract . . ." Tenn. Code Ann. § 9-8-307(a)(1)(L). Although the Tennessee Legislature waived the State's immunity with respect to breach of contract claims, the Tennessee Claims Commission ("TCC") was vested with exclusive jurisdiction to hear such claims. Tenn. Code Ann. § 9-8-307(a)(1). Furthermore, claims not specifically identified by the Act are still covered by the shield of sovereign immunity. *Jain v. University of Tennessee at Martin*, 670 F. Supp. 1388, 1393 (W.D. Tenn. 1987).

In the instant case, Plaintiff's claims are barred by the doctrine of sovereign immunity. While the State has waived its immunity to be sued for breach of contract claims, it has only done so to the extent that the claim is brought before the TCC. Thus, this court is without jurisdiction to hear Plaintiff's breach of contract claims against Defendants. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 n. 9 (1984) ("[A] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts."); *Boyd*, 848 F. Supp. at 114 (noting "evidence of a waiver to the specific claims raised is insufficient; there must as well be a waiver with respect to pursuit of a claim in federal court."). Furthermore, the Act does not mention a waiver of sovereign immunity for the state-law claims of bad faith dealing and wrongful termination, which means Defendants are immune from suit on those claims as well.

For the same reasons, Plaintiff's claim under the THRA must be dismissed. *See Boinapally v. University of Tennessee*, 23 F. App'x 512, 515 (6th Cir. 2001) (holding the district court properly dismissed the plaintiff's THRA claims against a state university because as an arm of the state, the university was immune to suit in federal court under the doctrine of sovereign immunity); *Henderson*, 282 F. Supp. 2d at 808 (noting that the State legislature waived its immunity for THRA

suits in state courts but not in federal courts); *Boyd*, 848 F. Supp. at 115 ("There is no express consent by Tennessee, neither within the THRA nor elsewhere, to suit in federal court for claims under the THRA."). Thus, the Court will **GRANT** Defendants' motion and dismiss Plaintiff's state-law claims.

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant's motion to dismiss (Court File No. 3) and **DISMISS** Plaintiff's complaint.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**